NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT REEVES BLAKEWOOD, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> JAMES D. HARLEY, Warden, ) <br> ) <br> Respondent. ) <br> _____ ) | No. C 11-0142 LHK (PR) <br><br> ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a California prisoner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer, and petitioner has filed a reply brief.[1] Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claim presented, and DENIES the petition.

**PROCEDURAL HISTORY**

In 2008, petitioner pled "no contest" to the following charges: orally copulating a person under the age of 18 (Cal. Pen. Code § 288a(b)(1)), transporting a child under the age of 16 to

---

[1] Petitioner filed an amended reply brief after his original reply. The court has considered the amended reply (docket number 17).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

another person for the purpose of a lewd and lascivious act (Cal. Pen. Code § 266j), furnishing methamphetamine to a minor (Cal. Health & Safety Code § 11380(a)), committing a lewd act upon a child at least 10 years younger (Cal. Pen. Code § 288(c)(1)), orally copulating and sodomizing a child under the age of 16 (Cal. Pen. Code §§ 288a(b)(2), 286(b)(2)), and possession of child pornography (Cal. Pen. Code § 311.11(a)).  Under the terms of a plea agreement, a number of additional counts were dismissed.  The trial court sentenced petitioner to a term of 14 years and eight months in state prison.

   The California Court of Appeal affirmed the judgment, and the California Supreme Court denied petitioner's petition for review summarily.  (Resp. Exs. 3, 4.)  On January 11, 2011, petitioner filed the instant petition for a writ of habeas corpus.

## BACKGROUND

   The California Court of Appeal summarized the facts of the case as follows:

> The following evidence was adduced at the hearing on the motion to suppress evidence: At approximately 3:30 p.m. on August 21, 2007, Officer Tamara Shoemaker responded to a dispatch call to the house at 1760 Stone Creek Drive in Petaluma.  There, she found John Doe sitting on the curb in front of the house.  Doe told her that he met defendant, who lived at the house, through an ad on craigslist.  He said that he had used methamphetamine, he was afraid, and defendant refused to take him home.  Doe also told Shoemaker that he was then 16 and that at age 15, he began engaging in sexual activity with defendant.  Doe further told Shoemaker that defendant lived with Malcolm [Alford].
>
> Shoemaker approached the house and knocked on the front door.  Defendant responded to the door after Shoemaker knocked three times.  Shoemaker asked defendant to go get Alford.  Defendant turned away from the front door to get Alford upstairs and Shoemaker followed him inside to the entry/dining room area.  When defendant and Alford came downstairs, Shoemaker asked Alford if he knew the young man in the front yard.  Alford said that he was mainly defendant's friend.  Shoemaker then asked defendant how he knew Doe.  Defendant said that he met Doe through a friend and that he had known him for approximately two years.  When Shoemaker realized that defendant was the person she needed to talk to, she told Alford that he could go back upstairs if he wanted.  Alford opted to go upstairs.
>
> Shoemaker continued to question defendant.  She noticed a hickey on his neck and asked him about it.  Defendant said that Alford had given it to him but then conceded that Doe had given it to him.  Defendant said that he was in love with Doe and that they had seen each other every weekend for the past two years and had engaged in sexual contact.  Shoemaker then went outside to consult with her sergeant who was with Doe.  She returned to the house and

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

advised defendant of his *Miranda* rights. Defendant did not request an attorney and continued to talk to Shoemaker. Defendant initially denied that Doe used drugs or alcohol. He admitted a previous addiction but claimed that he was not currently using narcotics. He later said that he had not used narcotics within the last few days. Shoemaker thought that defendant was under the influence because he appeared sweaty and pale.

Defendant denied that he paid Doe for sex, but acknowledged that he gave him a cell phone, credit card, and money for clothes. He admitted that he had engaged in oral and anal sex with Doe. At some point, when Shoemaker knew the questioning was going to continue about the sexual activity and drugs, she asked defendant if he recalled that she had read him his *Miranda* rights. Defendant answered affirmatively and acknowledged that he still understood them. After defendant's admissions, Shoemaker again contacted her sergeant outside, then returned and arrested defendant. Shoemaker testified that Alford came back downstairs right before she was putting the handcuffs on defendant. At no point did defendant or Alford ask her to leave the house.

Alford testified that on August 21, 2007, he was living with defendant and they were domestic partners. He was in his bedroom when defendant came up and told him, "Somebody wants to talk to you." Alford got out of bed and saw defendant standing with a Petaluma police officer. Alford asked the officer what he was doing in the house. The officer did not respond, but told Alford to go back into the bedroom.

Alford contacted an attorney. He then proceeded to tell defendant to "shut up" and told the police to get out of his house. But defendant continued to talk to the police. Alford was present when defendant was being arrested; Alford heard defendant being given his *Miranda* rights while the police were handcuffing him.

Officer Ryan McGreevy arrived at the scene approximately five minutes after Shoemaker and Sergeant Urton were there. His job was to act as Shoemaker's "cover" officer while she was questioning defendant. Defendant never told McGreevy to leave the house. Nor did defendant request an attorney. While defendant was being questioned, he was not handcuffed and the front door of the house was open. McGreevy later secured the residence while the search warrant was obtained. He did not see Alford until defendant was being placed under arrest.

(Resp. Ex. 3 at 2-3.)

## DISCUSSION

A.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

3

1  court unless the state court's adjudication of the claim: "(1) resulted in a decision that was
2  contrary to, or involved an unreasonable application of, clearly established Federal law, as
3  determined by the Supreme Court of the United States; or (2) resulted in a decision that was
4  based on an unreasonable determination of the facts in light of the evidence presented in the
5  State court proceeding."  28 U.S.C. § 2254(d).

6  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state
7  court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of
8  law or if the state court decides a case differently than [the] Court has on a set of materially
9  indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the
10 'reasonable application clause,' a federal habeas court may grant the writ if the state court
11 identifies the correct governing legal principle from [the] Court's decisions but unreasonably
12 applies that principle to the facts of the prisoner's case."  *Id.* at 413.

13 "[A] federal habeas court may not issue the writ simply because the court concludes in its
14 independent judgment that the relevant state-court decision applied clearly established federal
15 law erroneously or incorrectly.  Rather, the application must also be unreasonable."  *Id.* at 411.
16 A federal habeas court making the "unreasonable application" inquiry should ask whether the
17 state court's application of clearly established federal law was "objectively unreasonable."  *Id.* at
18 409.

19 B.     Analysis

20 Petitioner claims that the trial court violated his Fourth Amendment rights by denying his
21 motion to suppress evidence.  He contends that Officer Shoemaker violated his Fourth
22 Amendment rights by entering into his apartment without his consent, and therefore his
23 statements to Shoemaker in the apartment should have been excluded.

24 The California Court of Appeal denied this claim based on the following reasoning:

25         Defendant contends that the trial court erred in denying his motion to
           suppress evidence because he never gave the police consent to enter his home.
26         We conclude that the trial court properly denied the motion.

27         "The standard of appellate review of a trial court's ruling on a motion to

28 ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF
   APPEALABILITY

4

suppress is well established. We defer to the trial court's findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)  Here, the trial court found that Shoemaker contacted defendant at the door of his home, questioned him about Doe's allegations, and decided that he should be arrested and given his *Miranda* rights. Defendant was at all times cooperative and willing to speak with Shoemaker. The court concluded that there is a consensual encounter at the door: "It was not, in fact, a search but a conversation with Mr. Blakewood at the entrance to his house and, admittedly, inside, but at his – certainly he didn't object to that, and [the] conversations that Mr. Alford had with an attorney or with the officers, really have nothing to do with Mr. Blakewood's questioning."

Relying on *U.S. v. Shaibu* (9th Cir. 1990) 920 F.2d 1423 (*Shaibu*), defendant asserts that his failure to object to the police entrance does not imply consent. In *Shaibu*, the police were investigating bank fraud involving Security Pacific National Bank ATM cards. They entered an apartment complex looking for a suspect and encountered the defendant as he stepped out of his apartment, having left the door to his apartment open. The police asked the defendant if the suspect was present in the apartment. At that point, the defendant turned around and entered his apartment. The police followed him into the apartment without requesting permission to enter. Once inside, the police asked the defendant for identification and when he opened his wallet, the police seized it and removed a Security Pacific ATM card and proceeded to ask him questions about it. (*Id.* at p. 1424.) The police then obtained the defendant's consent to search for the suspect and found evidence of bank fraud in the apartment. (*Id.* at pp. 1424-1425.) The Ninth Circuit held that the evidence must be suppressed because
"merely retreating into one's home while being followed by a police officer [does not] constitute consent to a police entry." (*Id.* at p. 1425.) The court concluded that "in the absence of a specific request by police for permission to enter a home, a defendant's failure to object to such entry is not sufficient to establish free and voluntary consent. We will not infer both the request and the consent." (*Id.* at p. 1428.)

*Shaibu* is not controlling. Here, defendant, in response to Shoemaker's request to get Alford, left the door open and proceeded to locate Alford. While Shoemaker entered the home at that point, and was in the entry/dining area when defendant and Alford returned, neither defendant nor Alford then objected to Shoemaker's presence. Although *Shaibu* held that a defendant's failure to object to an officer's entry into a home is not sufficient to establish free and voluntary consent (*Shaibu*, *supra*, 920 F.2d at p. 1428), the courts have found implied consent when the suspect takes some action that infers consent by gesturing to the police to enter or assisting in the search of others (*United States v. Impink* (9th Cir. 1984) 728 F.2d 1228, 1233, fn. 3).[2]

---

[2] We note that the Second Circuit has criticized *Shaibu*, stating that it is inconsistent with *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 228, 241-242, 248-249, which holds that the concept of a knowing and intelligent waiver does not govern in the Fourth Amendment context and that as long as the police do not coerce consent, a search conducted on the basis of consent is

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

5

> *People v. Harrington* (1970) 2 Cal.3d 991 is instructive. There, the police went to an apartment looking for a runaway juvenile. (*Id.* at p. 994.) The defendant answered the door, and identified himself upon the officer's request. When the officer asked if he could go inside, the defendant made no verbal response but stepped aside and made a gesture by extending his left hand. The officer entered the apartment and found marijuana in plain sight. (*Id.* at p. 995.) The court held that the defendant's gesture indicated an invitation to the officer to enter the apartment. The court held that "a consent to enter may be expressed by actions as well as words." (*Ibid*.) Other courts have inferred consent from the cooperative attitude of a defendant. For example, in *United States v. Griffin* (7th Cir. 19976) 530 F.2d 739, 743, the defendant initially slammed the door on the officers the first time they knocked, but then opened the door and stepped back in response to the second knock. Once the officers stepped inside the door, the defendant turned and walked into the living room, leading the officers who were following close behind. The court noted that at no point did the defendant object in any way to the officers' presence inside the apartment. (*Id.* at p.
> 743, fn. 3.)
>
> Here, defendant's actions in leaving the door to his home open, getting Alford in response to Shoemaker's request, and cooperating in responding to Shoemaker's questioning support the court's finding that he impliedly consented to Shoemaker's entry into his home. Moreover, when Alford subsequently determined, after consulting with an attorney, that defendant was not required to talk with Shoemaker and could ask her to leave, defendant still did not object to Shoemaker's presence and continued to cooperate and talk with her. On this evidence, the trial court did not err in finding that there was a consensual encounter at defendant's home. The court properly denied the motion to suppress evidence.

(Resp. Ex. 3 at 4-6 (renumbered footnote in original).)

As an initial matter, petitioner's plea of "no contest" precludes habeas review of his claim. Under California law, a "plea of nolo contendere 'is the functional equivalent of a guilty plea.'" *United States v. Anderson*, 625 F.3d 1219, 1220 (9th Cir. 2010) (quoting *People v. Whitfield*, 54 Cal. Rptr. 2d 370, 377 (Cal. Ct. App. 1996)). A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred before the plea of guilty. *Haring v. Prosise*, 462 U.S. 306, 319-20 (1983) (holding that guilty plea forecloses consideration of pre-plea constitutional deprivations); *Tollett v. Henderson*,

---

not an unreasonable search. (*U.S. v. Garcia* (2d Cir. 1995) 56 F.3d 418, 424.) The Second Circuit also recognized that consent to search a residence can be found from an individual's words, acts, or conduct. (*Ibid*.)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

6

1  411 U.S. 258, 266-67 (1973) (same).  Petitioner's claim is that his Fourth Amendment
2  rights were violated when the trial court denied his motion to suppress.  He entered his
3  "no contest" plea after that motion.  Therefore, under *Haring* and *Tollett* his claim is
4  foreclosed by his plea.  *See*, *e.g.*, *United States v. Jackson*, 697 F.3d 1141, 1144 (9th Cir.
5  2012) (guilty plea foreclosed challenge to pre-plea violation of Speedy Trial Act);
6  *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) (plea foreclosed claim that prior to
7  plea defense counsel failed to prevent admission of his confession).  Indeed, the only
8  challenges left open in federal habeas corpus after a guilty plea is the voluntary and
9  intelligent character of the plea and the nature of the advice of counsel to plead.  *Hill v.*
10 *Lockhart*, 474 U.S. 52, 56-57 (1985).  Petitioner does not make either of these claims
11 here.
12         Petitioner's claim is also barred by the United States Supreme Court decision in
13 *Stone v. Powell*, 428 U.S. 465 (1976).  *Stone* bars federal habeas review of Fourth
14 Amendment claims as long as the state provided an opportunity for full and fair
15 litigation of those claims.  428 U.S. at 481-82, 494.
16         Petitioner argues that *Stone* does not bar review of his claim because the state
17 courts did not provide him an opportunity for full and fair litigation of his claims.  The
18 factors courts examine to determine whether there was an opportunity for full and fair
19 litigation of a Fourth Amendment claim under *Stone* are: (1) the merits of the factual
20 dispute were resolved in the state hearing; (2) the state's factual determination is fairly
21 supported by the record; (3) the state's fact-finding procedure was adequate to afford a
22 full and fair hearing; (4) there is a substantial allegation of newly discovered evidence,
23 (5) material facts were not adequately developed in the state hearing; (6) any other
24 reason it appears the state did not afford the petitioner a full and fair fact hearing; and
25 (7) the extent to which the claims were briefed before and considered by the state trial
26 and appellate courts.  *Terrovona v. Kincheloe*, 912 F.2d 1176, 1178-79 & n.4 (9th Cir.
27 1990) (citations and internal quotations omitted).
28 ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

7

1  The trial court conducted a hearing and accepted briefs on petitioner's motion to
2  suppress. (Resp. Ex. 1 at 156-68, 292.) The record, including the transcript of the
3  hearing, shows that witnesses for both sides were examined and cross-examined,
4  attorneys for both sides presented their arguments orally and in their motion papers, and
5  the trial court reached the reasoned decision that consent to Shoemaker's entry was
6  implied and the Fourth Amendment was not violated. (Resp. Ex. 1 at 156-68, 255-68;
7  Ex. 2 at 55-110.) Applying the factors listed above, the central dispute as to whether
8  there was consent to Officer Shoemaker's entering the house was resolved by the trial
9  court, and the trial court's finding implied consent was fairly supported by the evidence
10 that petitioner left his apartment door open, did not object to Shoemaker's presence
11 inside, and cooperated with Shoemaker once she was inside. Furthermore, the
12 procedure for litigating Fourth Amendment claims in California, authorized by
13 California Penal Code § 1538.5, has been found adequate to provide a full and fair
14 hearing under *Stone*. *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990). There is
15 no allegation of new evidence or that material facts could have been further developed
16 with more evidence, nor is there any other reason that it appears the suppression hearing
17 was not full and fair. Finally, it is clear from the California Court of Appeal's opinion
18 that petitioner briefed the same Fourth Amendment claim he raises here, and that the
19 court carefully considered the claim, including analyzing and distinguishing the case law
20 relied upon by petitioner.[3] (Resp. Ex. 3 at 4-6 (distinguishing *United States v. Shaibu*,
21 920 F.2d 1423, 1424-25 (9th Cir. 1990).) Based on an application of the relevant
22 factors, the record makes clear that petitioner had an opportunity for full and fair
23 litigation of his Fourth Amendment claim in the state courts.
24  Petitioner argues that he did not have a full and fair hearing because the state

---

[3]The attorney who represents petitioner in the instant federal petition also argued his claims in the state courts. (Resp. Ex. 1 at 156.)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

8

1  courts incorrectly determined that there was consent and incorrectly distinguished
2  *Shaibu*. Even if the state courts' determination of the Fourth Amendment issues is
3  improper, however, *Stone* precludes review of the claim so long as the petitioner was
4  provided a full and fair opportunity to litigate the issue. *Locks v. Sumner*, 703 F.2d 403,
5  408 (9th Cir. 1983). "The relevant inquiry is whether petitioner had the opportunity to
6  litigate his claim, not whether he did in fact do so or even whether the claim was
7  correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).[4]
8  Accordingly, petitioner's disagreement with the state courts' analysis of the facts and
9  pertinent case law, including the California Court of Appeal's distinguishing of *Shaibu*,
10 does not mean that he did not have the opportunity to fully and fairly litigate his claim
11 under *Stone*.
12     Petitioner cites the Seventh Circuit's decision in *United States ex. rel. Bostick v.
13 Peters*, 3 F.3d 1023, 1029 (7th Cir. 1983), in which the court found that the state courts
14 did not afford petitioner an opportunity for full and fair litigation of his claim. In
15 *Bostick*, however, the "unanticipated and unforeseen application of a [state court] rule
16 on appeal prevented the state courts from properly considering the merits of the
17 petitioner's claim." *Cf. id.* (finding no full and fair hearing because where petitioner
18 was not allowed to supplement his affidavit with testimony at suppression hearing); *cf.
19 also Anderson v. Calderon*, 232 F.3d 1053, 1068 (9th Cir. 2000) (finding no opportunity
20 for full and fair litigation because Fourth Amendment claim at issue did not exist until
21 years after petitioner's arrest and trial), *overruled on other grounds*, *Osband v.
22 Woodford*, 290 F.3d 1036, 1043 (9th Cir. 2002). As discussed above, the state trial and
23 appellate courts here were not prevented from considering the merits of petitioner's
24 claim because of some state court rule or because his claim did not yet exist.

---

[4]Even where a California petitioner did not litigate the claim in the state courts, *Stone* bars federal habeas review because Section 1538.5 provides adequate opportunity to do so. *Gordon*, 895 F.2d at 613-14.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

9

Petitioner's disagreement with the state courts' analysis and conclusions is "precisely" the "type of consideration *Stone v. Powell* precludes" from federal habeas review. *See Dortch v. O'Leary*, 863 F.2d 1337, 1342 (7th Cir. 1988) (internal quotations and citations omitted).

Lastly, petitioner's citation to three United States Supreme Court decisions is misplaced. *See Bumper v. North Carolina*, 391 U.S. 543 (1968); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverman v. United States*, 365 U.S. 505 (1961). These decisions are irrelevant to whether federal habeas review of his claims is barred by *Stone* because they all predate *Stone*, and two of them are not even habeas cases.

The parties presented to both the state trial court and the California Court of Appeal all of the facts necessary to consider petitioner's Fourth Amendment claim, and the state courts carefully and thoroughly analyzed those facts and the applicable constitutional standards. Because his claim has been considered in detail by the state courts, *Stone* forecloses this court from considering it again on habeas review.

## CONCLUSION

Petitioner's petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 3/3/2014

LUCY H. KOH
United States District Judge

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY